1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

No. 09-05371 CW

10
11
12
13
14
15
16
17

CHEVRON CORPORATION,

          Plaintiff,

     v.

CRISTÓBAL BONIFAZ and THE LAW OFFICES
OF CRISTÓBAL BONIFAZ,

          Defendants.
_____/

ORDER GRANTING IN
PART DEFENDANTS'
ANTI-SLAPP MOTION
TO STRIKE,
GRANTING IN PART
CHEVRON'S REQUEST
FOR A CONTINUANCE
AND GRANTING
CHEVRON'S MOTION
FOR LEAVE TO FILE
ADDITIONAL
BRIEFING
(Docket Nos. 25
and 44)

18
19
20
21
22
23
24
25
26
27
28

          Plaintiff Chevron Corporation brings this action for malicious
prosecution against Defendants Cristóbal Bonifaz and The Law
Offices of Cristóbal Bonifaz.  Defendants move to strike Chevron's
complaint under California Code of Civil Procedure section 425.16,
commonly known as California's anti-Strategic Lawsuit Against
Public Participation (anti-SLAPP) statute.  Chevron asks the Court
to continue its decision on the motion and to allow discovery
pursuant to Federal Rule of Civil Procedure 56(f).  In the
alternative, Chevron opposes Defendants' Motion.  Chevron also
filed an administrative motion for leave to file a response to

United States District Court
For the Northern District of California

Defendants' evidentiary objections and a reply in support of its request for a continuance of Defendants' motion to strike.  The motions were taken under submission on the papers.  Having considered the papers submitted by the parties, the Court GRANTS in part Defendants' anti-SLAPP Motion to Strike, GRANTS in part Chevron's request for a continuance to conduct discovery and GRANTS Chevron's motion for leave to file its additional brief.  The Court defers its decision on Defendants' motion as it pertains to striking Chevron's action to the extent it is based on Defendants' continued prosecution of claims by Luisa Maribel Jame Gonzales; Chevron may conduct discovery on whether Defendants knew of Ms. Jame's admission that she did not have cancer.

BACKGROUND

Chevron is a Delaware corporation with a principal place of business in San Ramon, California.  Its malicious prosecution action arises from Gonzales v. Texaco Inc., No. 06-02820 WHA (N.D. Cal.).  Defendants Bonifaz and his law firm (hereinafter collectively, Bonifaz), citizens of Massachusetts, represented the Gonzales plaintiffs.

Like several other actions filed in the United States and in Ecuador, Gonzales involved claims arising from oil exploration and production operations in the Oriente region of Ecuador.  Litigation against Chevron and/or its subsidiaries over these activities has spanned several years.  In addition to the Gonzales case, Bonifaz was involved in another action against Chevron, filed in 2003 in Lago Agrio, Ecuador by forty-eight Ecuadorians.  He had been discharged as counsel by the plaintiffs in that suit.

2

**United States District Court**
For the Northern District of California

In preparation for <u>Gonzales</u>, in January, 2006, Bonifaz engaged Gerardo Peña Matheus, an Ecuadorian attorney, to identify potential plaintiffs. Rector Decl., Ex. H.[1] Bonifaz asked Mr. Peña to find "[t]hree or four people who have resided close to the lakes of petroleum left by Texaco and who have discovered in the last four years that they have some form of cancer." Rector Decl., Ex. H at 3. He also asked for a letter from a "Dr. Ribadeneira or from any medic who has examined these persons that says that in his opinion there is at least a 51% probability that the cancer was caused by the fact that these people have been exposed to petroleum contamination in the Amazon." Rector Decl., Ex. H at 3.

On April 25, 2006, Bonifaz and other attorneys initiated the <u>Gonzales</u> action on behalf of nine Ecuadorians, bringing claims against Chevron and two of its subsidiaries, Texaco and Texaco Petroleum Company (TexPet). Defs.' Request for Judicial Notice

_____

[1] Chevron asks the Court to take judicial notice of Exhibits A-C, K-L, P, R and V of the Declaration of Thomas Rector, all of which contain court orders from the <u>Gonzales</u> action. A federal court may take judicial notice of facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). This includes taking "notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." <u>United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.</u>, 971 F.2d 244, 248 (9th Cir. 1992). The Court GRANTS Chevron's request and takes notice of the actions taken by the <u>Gonzales</u> court. However, the Court does not take notice of the truth of the findings of fact contained in these orders. <u>United States v. Sine</u>, 493 F.3d 1021, 1036 (9th Cir. 2007) (stating that "the introduction of discrete judicial factfindings and analysis underlying the judgment to prove the truth of those findings and that analysis constitutes the use of hearsay"); <u>see also</u> <u>Herrick v. Garvey</u>, 298 F.3d 1184, 1191-92 (10th Cir. 2002); <u>United States v. Jones</u>, 29 F.3d 1549, 1554 (11th Cir. 1994); <u>Nipper v. Snipes</u>, 7 F.3d 415, 417 (4th Cir. 1993).

(RJN),[2] Ex. 1.  Luisa Maribel Jame Gonzales, Vilma Jacqueline Moreno Chuquiom, Luz Maria Armas Cadenas and Maria Ignacia Cano Zambrano[3] averred that they had cancer caused by pollution from Texaco and TexPet's activities in the region.  Their spouses, Nixon Rodriguez, Tobias Alberto Canache, Jose Bonilla and Arturo Alava, each brought claims based on their alleged fear of cancer and emotional injury caused by their respective wives' cancer.  Gloria Carmina Vera Chamba asserted claims based on her son's alleged leukemia.  In the operative complaint, the plaintiffs sought recovery for negligence, intentional or reckless infliction of emotional distress and battery.  Defs.' RJN, Ex. 9 ¶¶ 81-100.

The Gonzales plaintiffs did not prevail.  The court either dismissed with prejudice, by motion or pursuant to stipulation, or granted summary judgment for the oil companies on the claims brought by each of the plaintiffs.  On January 31, 2007, the court dismissed Ms. Moreno's and Mr. Canache's claims with prejudice because they failed to cooperate during discovery.  Defs.' RJN, Ex. 13, at 2.  On August 3, 2007, the court dismissed the claims of Ms.

---

[2] Defendants ask the Court to take judicial notice of forty-two exhibits, which consist of documents filed in the Gonzales action.  Chevron objects to Defendants' request for notice of Exhibits 2-7, 9, 11, 12, 14-16, 18, 19, 23, 24, 27-32, 35 and 41, to the extent that they are offered for anything beyond the fact that they were proffered in Gonzales.  The Court GRANTS Defendants' request for judicial notice.  However, as with Chevron's request, the Court does not take notice of these documents for any hearsay purpose.

[3] The parties use different spellings and conventions with regard to the Gonzales plaintiffs' names.  For the purposes of clarity and consistency, the Court adopts the spelling provided in the Second Amended Complaint filed in Gonzales, Defs.' RJN, Ex. 9 ¶¶ 8-16, and the conventions used by Defendants in this action.

4

United States District Court
For the Northern District of California

Vera, Ms. Jame and Mr. Rodriguez with prejudice, concluding that terminating sanctions were appropriate because they had engaged in deliberately deceptive practices.  Rector Decl., Ex. B.  In addition, the court held that summary judgment was proper because there was no triable issue of fact as to these plaintiffs' claims. Id.  In connection with this dismissal, the court, on its own motion, imposed Rule 11 sanctions on Bonifaz and his co-counsel. Rector Decl., Ex. A.  On August 27, 2007, pursuant to Federal Rule of Civil Procedure 41(a), the parties jointly stipulated to the dismissal with prejudice of Mr. Bonilla's and Mr. Alava's claims. Defs.' RJN, Exs. 25-26.  Finally, on November 15, 2007, the court entered summary judgment against Ms. Armas and Ms. Cano, holding that the relevant statute of limitations had run on their claims. Rector Decl., Ex. V; Defs.' RJN, Ex. 36.

In the current complaint, Chevron alleges that Gonzales was part of an extortion scheme by Bonifaz and others.  It pleads that, after the plaintiffs in the Lago Agrio litigation discharged him as their lawyer, Bonifaz initiated the Gonzales suit "as a threat to the money and political power" that those plaintiffs would gain from that litigation.  Compl. ¶ 43.

Chevron brings its action for malicious prosecution, pleading that it prevailed on the merits in Gonzales, that Bonifaz did not have probable cause to bring or to continue to prosecute the action and that he harbored malice against Chevron.  It seeks various types of relief, including special damages in the amount of $4 million.

**United States District Court**
For the Northern District of California

LEGAL STANDARD

California's anti-SLAPP statute provides,

A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

Cal. Civ. Proc. Code § 425.16(b)(1). California anti-SLAPP motions to strike are available to litigants proceeding in federal court. Thomas v. Fry's Elecs., Inc., 400 F.3d 1206, 1206 (9th Cir. 2005). Courts analyze these motions in two steps. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." Equilon Enter. v. Consumer Cause, Inc., 29 Cal. 4th 53, 67 (2002). Second, the court "determines whether the plaintiff has demonstrated a probability of prevailing on the claim." Id.

"At [the] second step of the anti-SLAPP inquiry, the required probability that [a party] will prevail need not be high." Hilton v. Hallmark Cards, 599 F.3d 894, 908 (9th Cir. 2010). The "statute does not bar a plaintiff from litigating an action that arises out of the defendant's free speech or petitioning; it subjects to potential dismissal only those actions in which the plaintiff cannot state and substantiate a legally sufficient claim." Id. at 908 (quoting Navellier v. Sletten, 29 Cal. 4th 82, 93 (2002)) (quotation marks omitted). An anti-SLAPP motion to strike premised on legal arguments is similar to a motion under Rule 12(b)(6), whereas one based on a lack of evidence is similar to a summary

judgment motion.  <u>Rogers v. Home Shopping Network</u>, 57 F. Supp. 2d 973, 981 (C.D. Cal. 1999).

A federal court may not apply provisions of the anti-SLAPP statute if doing "so would result in a 'direct collision' with a Federal Rule of Civil Procedure." <u>Metabolife Int'l, Inc. v. Wornick</u>, 264 F.3d 832, 845 (9th Cir. 2001).  For instance, subsections (f) and (g) of section 425.16 do not operate in federal court.  <u>Id.</u> at 846.  These subsections "'create a default rule that allows the defendant served with a complaint to immediately put the plaintiff to his or her proof before the plaintiff can conduct discovery.'"  <u>Id.</u> (quoting <u>Rogers</u>, 57 F. Supp. 2d at 980).  This rule directly collides with Federal Rule of Civil Procedure 56(f), which requires "discovery 'where the nonmoving party has not had the opportunity to discover information that is essential to its opposition.'"  <u>Metabolife</u>, 264 F.3d at 846 (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986)).  Accordingly, on an anti-SLAPP motion to strike, federal courts must apply Rule 56(f) to determine whether a party is entitled to conduct discovery.

DISCUSSION

Because it arises from a defendant's constitutional right to petition, "every claim of malicious prosecution is a cause of action arising from protected activity because every such claim necessarily depends upon written and oral statements in a prior judicial proceeding." <u>Daniels v. Robbins</u>, 182 Cal. App. 4th 204, 215 (2010) (citing <u>Jarrow Formulas, Inc. v. LaMarche</u>, 31 Cal. 4th 728, 734-35 (2003)).  Chevron does not dispute that its suit arises from protected activity.  Accordingly, Bonifaz satisfies the first

step of the anti-SLAPP inquiry and shifts the burden to Chevron to demonstrate that it can "state and substantiate" its malicious prosecution action.  Hilton, 599 F.3d at 908.

I.    Probability of Success on the Merits

A claim for malicious prosecution requires a plaintiff to prove that a defendant's earlier litigation:

> (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in [the plaintiff's] favor; (2) was brought without probable cause; and (3) was initiated with malice.

Estate of Tucker ex rel. Tucker v. Interscope Records, Inc., 515 F.3d 1019, 1030 (9th Cir. 2008) (quoting Zamos v. Stroud, 32 Cal. 4th 958, 965 (2004)) (emphasis in original).  A defendant can also be liable for "continuing to prosecute a lawsuit discovered to lack probable cause."  Zamos, 32 Cal. 4th at 973.

Malicious prosecution actions are disfavored because of their "potential to impose an undue 'chilling effect' on the ordinary citizen's willingness to . . . bring a civil dispute to court."  Sheldon Appel Co. v. Albert & Oliker, 47 Cal. 3d 863, 872 (1989).  To deter excessive and frivolous lawsuits, the "preferable approach is 'the adoption of measures facilitating the speedy resolution of the initial lawsuit and authorizing the imposition of sanctions for frivolous or delaying conduct within that first action itself.'"  Wilson v. Parker, Covert & Chidester, 28 Cal. 4th 811, 817 (2002) (quoting Sheldon Appel, 47 Cal. 3d at 872).

A.    Termination of Gonzales Claims in Favor of Chevron

A "favorable termination does not occur merely because a party complained against has prevailed in an underlying action."  Casa

8

Herrera, Inc. v. Beydoun, 32 Cal. 4th 336, 342 (2004) (quoting Lackner v. LaCroix, 25 Cal. 3d 747, 751 (1979)) (internal quotation marks omitted).  To be considered favorable for the purposes of a malicious prosecution suit, "the termination must reflect the merits of the action and the plaintiff's innocence of the misconduct alleged in the lawsuit." Casa Herrera, 32 Cal. 4th at 342 (quoting Pender v. Radin, 23 Cal. App. 4th 1807, 1814 (1994)) (internal quotation marks omitted).  For example, a court's decision to grant "summary judgment because there was insufficient evidence to establish a triable issue of fact" constitutes a favorable termination.  Casa Herrera, 32 Cal. 4th at 342 (citing Sierra Club Found. v. Graham, 72 Cal. App. 4th 1135, 1149-50 (1999)).  However, a "technical or procedural termination," such as a dismissal on statute of limitations grounds, "is not favorable for purposes of a malicious prosecution claim." Casa Herrera, 32 Cal. 4th at 342 (citation and internal quotation marks omitted).

As noted above, the Gonzales court dismissed the claims by Ms. Vera, Ms. Jame and Mr. Rodriguez with prejudice, concluding that terminating sanctions and the entry of summary judgment against these plaintiffs were appropriate.  Rector Decl., Ex. B at 5. Chevron asserts, and Bonifaz does not dispute, that this satisfies the favorable decision requirement.

The parties contest, however, the relevance and impact of the dismissal of the other plaintiffs' claims.  As explained below, the dismissal of these claims does not satisfy the favorable termination requirement and, accordingly, the Court strikes Chevron's malicious prosecution action to the extent that it relies

United States District Court
For the Northern District of California

9

1     on these claims.

2             1.    Dismissal of Claims by Arturo Alava

3         Chevron asserts that the dismissal of Mr. Alava's claims,

4     which occurred pursuant to the parties' joint stipulation,

5     constitutes a favorable termination on the merits.

6         "'In most cases, a voluntary unilateral dismissal is

7     considered a termination in favor of the defendant in the

8     underlying action; the same is true of a dismissal for failure to

9     prosecute.'" <u>Fuentes v. Berry</u>, 38 Cal. App. 4th 1800, 1808 (1995)

10    (quoting <u>Villa v. Cole</u>, 4 Cal. App. 4th 1327, 1335 (1992)); <u>see</u>

11    <u>also</u> <u>Sycamore Ridge Apartments, LLC v. Naumann</u>, 157 Cal. App. 4th

12    1385, 1400 (2007) (citing <u>Weaver v. Superior Court</u>, 95 Cal. App. 3d

13    166, 185 (1979)).   This rule "'arises from the natural assumption

14    that one does not simply abandon a meritorious action once

15    instituted.'" <u>Sycamore Ridge</u>, 157 Cal. App. 4th at 1400 (quoting

16    <u>Lackner</u>, 25 Cal. 3d at 750-51).

17         However, resolution of claims that "leaves some doubt as to

18    the defendant's innocence or liability is not a favorable

19    termination . . . ." <u>Villa v. Cole</u>, 4 Cal. App. 4th 1327, 1335

20    (1992).   For this reason, a "dismissal resulting from negotiation,

21    settlement, or consent is generally not deemed a favorable

22    termination of the proceedings." <u>Minasian v. Sapse</u>, 80 Cal. App.

23    3d 823, 827 n.4 (1978) (citing <u>Webb v. Youmans</u>, 248 Cal. App. 2d

24    851, 853 (1967)).   "In such a case the dismissal reflects

25    ambiguously on the merits of the action as it results from the

26    joint action of the parties, thus leaving open the question of

27    defendant's guilt or innocence." <u>Minasian</u>, 80 Cal. App. 4th at 827

28

**United States District Court**
For the Northern District of California

10

n.4 (citation omitted).

Although voluntary, the dismissal of Mr. Alava's claims was not a unilateral act.  Chevron and Mr. Alava jointly stipulated to dismiss his claims, pursuant to Federal Rule of Civil Procedure 41(a).  Chevron provides no authority to support its position that a dismissal pursuant to a joint stipulation constitutes a favorable termination on the merits.[4]  Chevron could have declined to stipulate and required Mr. Alava to seek a court order to dismiss his claims.  See Fed. R. Civ. P. 41(a)(2).  Because Chevron's participation clouds the issue of its innocence, the dismissal of Mr. Alava's claims does not constitute a favorable termination on the merits.

Accordingly, the Court strikes Chevron's malicious prosecution action to the extent that it rests on Mr. Alava's claims.

> 2.  Dismissal of Claims by the Remaining Gonzales Plaintiffs

Chevron does not assert that the dismissal of the claims by Ms. Moreno, Mr. Canache, Ms. Armas, Mr. Bonilla and Ms. Cano satisfies the favorable termination requirement.  Therefore, Chevron cannot maintain its malicious prosecution action based on these plaintiffs' claims.  Accordingly, the Court strikes Chevron's action to the extent that it rests on these claims.

B.  Probable Cause

"The probable cause inquiry is objective, asking whether a reasonable person would have thought that the claim was legally

----

[4] Notably, Chevron does not assert that the dismissal of Mr. Bonilla's claims, which also occurred pursuant to joint stipulation, constituted a favorable termination.

United States District Court
For the Northern District of California

tenable 'without regard to her mental state.'" <u>Estate of Tucker</u>,
515 F.3d at 1031 (editing marks omitted).  This is a lenient
standard; only "those actions that any reasonable attorney would
agree are totally and completely without merit may form the basis
for a malicious prosecution suit." <u>Wilson</u>, 28 Cal. 4th at 817
(citation and internal quotation and editing marks omitted).

The "existence or nonexistence of probable cause is a legal
question to be resolved by the court in the malicious prosecution
case; litigants are thus protected against the danger that a lay
jury would mistake a merely unsuccessful claim for a legally
untenable one." <u>Id.</u> (citing <u>Sheldon Appel</u>, 47 Cal. 3d at 874-77).

     1.   Sanctions Order in <u>Gonzales</u>

Chevron contends that the order sanctioning Bonifaz and his
associates for the handling of the claims by Ms. Vera, Ms. Jame and
Mr. Rodriguez constitutes <u>prima facie</u> evidence of the lack of
probable cause.

Citing <u>Mattel, Inc. v. Luce, Forward Hamilton & Scripps</u>, 99
Cal. App. 4th 1179 (2002), Chevron argues that the findings of the
court in the <u>Gonzales</u> case in support of its sanctions order are
competent evidence that Bonifaz lacked probable cause to bring
suit.  In <u>Mattel</u>, the state court provided, "The findings made in
connection with the rule 11 sanctions, the appropriate subject of
judicial notice requested of the trial court, are evidence that the
underlying action was filed without probable cause." <u>Id.</u> at 1191
(citing Cal. Evid. Code § 451(a)).  Other state courts, however,
have reached contrary conclusions, holding that such findings are
not admissible.  <u>See, e.g.</u>, <u>Fowler v. Howell</u>, 42 Cal. App. 4th

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1746, 1749 (1996) (stating "a court may not take judicial notice of the truth of a factual finding made in another action") (emphasis in original); Sosinsky v. Grant, 6 Cal. App. 4th 1548, 1563 (1992) (holding "judicial notice could not properly be taken of the truth of the factual findings of the trial judge" in a prior case). Further, the holding in Mattel does not comport with the Federal Rules of Evidence.  In federal court, findings of fact by another tribunal constitute hearsay if offered for the truth of the matter asserted.  Sine, 493 F.3d at 1036.  Chevron offers no hearsay exception or controlling authority to establish that these findings are admissible for their truth.  The sanctions order constitutes competent evidence that Bonifaz was sanctioned, but the underlying findings made in support thereof are hearsay and not admissible for their truth.

This leaves the question of whether Rule 11 sanctions, on their own, suffice as evidence that Bonifaz lacked probable cause at the time he brought Gonzales.  They do not.  The imposition of sanctions demonstrates that Bonifaz and his colleagues made improper representations to the court.  See Fed. R. Civ. P. 11(b)-(c).  However, the sanctions do not speak to his knowledge when he initiated Gonzales.  Nor do they show that, based on this knowledge, the plaintiffs' claims were legally untenable.  Certainly, the levy of sanctions suggests deficient conduct by Bonifaz.  However, Chevron stretches the meaning of the sanctions too far.  It does not necessarily follow that Bonifaz lacked probable cause to initiate the suit.  See Chromatic Comm'n Enters., Inc. v. Business Guides, Inc., 1993 WL 311503, at *7 (N.D. Cal.)

13

(concluding that defendants in malicious prosecution action had probable cause, despite the imposition of Rule 11 sanctions in the underlying suit).

Accordingly, the sanctions order does not suffice as _prima facie_ evidence that Bonifaz lacked probable cause when he brought suit.

### 2.    Failure To Obtain Consent To File Suit

To show Bonifaz lacked probable cause, Chevron cites findings made by the Gonzales court that Bonifaz failed to obtain proper consent from Ms. Jame, Mr. Rodriguez and Ms. Vera to bring a lawsuit in the United States on their behalf.  As noted above, the Gonzales court's findings are inadmissible hearsay in this action. Chevron offers no other evidence or authority to show that these plaintiffs did not give consent or that, based on the forms submitted, any reasonable attorney would have concluded that bringing suit would be legally untenable.

### 3.    Claims by Luisa Maribel Jame Gonzales

Chevron asserts that Bonifaz lacked probable cause to initiate and to continue to prosecute a lawsuit on behalf of Ms. Jame.  It argues that Ms. Jame's intake form contained limited information and did not provide Bonifaz with probable cause to bring suit.  On the form, Ms. Jame indicated that she had breast cancer and that she believed it was the result of contamination caused by Texaco "1 year ago." Rector Decl., Ex. I at 1.  Concerning how she knew that she had cancer caused by contamination, Ms. Jame stated, "Because everybody said that [the] result of the contamination is going to kill us, we live because we work." Rector Decl., Ex. I at 1.  She

14

also acknowledged that there was publicity about cancer being caused by petroleum contamination.  Rector Decl., Ex. I at 1. Chevron points out that Ms. Jame did not refer to any doctor's evaluation or medical record to support her claim that she had cancer.  Thus, Chevron asserts, the form did not give Bonifaz probable cause to bring suit on her behalf.

California courts have stated that, "when evaluating a client's case and making an initial assessment of tenability, the attorney is entitled to rely on information provided by the client." Morrison v. Rudolph, 103 Cal. App. 4th 506, 512-13 (2002), disapproved of on other grounds by Zamos, 32 Cal. 4th at 973; accord Estate of Tucker, 515 F.3d at 1036.  It is reasonable for an attorney to rely upon this information, "'unless the client's representations are known to be false.'"  Morrison, 103 Cal. App. 4th at 513 (quoting Mallen & Smith, Legal Malpractice § 6.19 (5th ed. 2000)).

The statements on Ms. Jame's intake form do not show affirmatively that Bonifaz knew her claims were false.  It was reasonable for Bonifaz to rely on Ms. Jame's representation that she had cancer.  Also, Ms. Jame lived in an area, contaminated by petroleum pollution, where Texaco and TexPet undertook oil exploration and production activities; thus, it was not unreasonable for Bonifaz to assume a connection between the companies' actions and Ms. Jame's reported cancer.  Although it appears that Bonifaz had a minimal basis for probable cause, Chevron has not made a prima facie showing that Ms. Jame's claims were totally and wholly without merit.  In suggesting that the

15

information was sparse and that Ms. Jame may have been improperly motivated by publicity, Chevron implicitly argues that Bonifaz lacked probable cause because he should have known that her claims may have been false.  However, such an argument espouses a negligence standard for malicious prosecution, which the California Supreme Court has rejected.  Sheldon Appel, 47 Cal. 3d at 883. Chevron also appears to suggest that Bonifaz was remiss in not fully investigating Ms. Jame's claims.  This argument is unavailing because, as Chevron acknowledges, "the reasonableness of his investigation, or lack thereof, is not relevant to the objective determination of probable cause . . . ."  Opp'n at 24; see also Sheldon Appel, 47 Cal. 3d at 883.  Chevron provides no argument or authority to show that any reasonable attorney would have concluded, at the onset, that Ms. Jame's claims were legally untenable.

Even if Bonifaz had probable cause when he filed the lawsuit, Chevron asserts, he lacked probable cause to continue prosecuting Ms. Jame's claims after she admitted to Othni Lathram and Dennis Patanzis, who were other attorneys for the plaintiffs, that she did not have breast cancer.  Even though Ms. Jame had never communicated this directly to Bonifaz, Chevron argues that a jury could infer that he knew this information because his co-counsel had been told.  Bonifaz acknowledges that Ms. Jame admitted to these attorneys that she did not have cancer, but nevertheless asserts that this is immaterial as to his knowledge and the existence of probable cause.

This admission by Ms. Jame to the other attorneys demonstrates

United States District Court
For the Northern District of California

that Chevron's action could have some merit.  If Bonifaz knew that Ms. Jame did not actually have cancer, he would have lacked probable cause to continue Ms. Jame's suit.  Bonifaz states that he never met or spoke with any of the <u>Gonzales</u> plaintiffs.  Bonifaz Decl., ¶ 6.  Instead, it appears that he delegated investigatory duties to other attorneys.  Bonifaz does not deny that he was told of Ms. Jame's revelation.  Nor does he provide evidence that his associates withheld such information from him.  His substantial role in the litigation and the significance of Ms. Jame's admission warrant affording Chevron the opportunity to conduct discovery on whether Bonifaz knew of Ms. Jame's statement to Lathram and Patanzis.  Because such discovery is necessary for Chevron to mount its opposition, the Court defers its ruling on Bonifaz's motion to the extent that it seeks to strike Chevron's claim that his continued prosecution of Ms. Jame's claims was malicious.

Bonifaz cites <u>Estate of Tucker</u>, which provides that "a party's malfeasance in initiating a lawsuit is not imputable to counsel. Nor are claims related to continuing such a lawsuit interchangeable for parties and attorneys." 515 F.3d at 1032 (citation omitted). This case is inapposite.  Wrongdoing by Ms. Jame or co-counsel will not be imputed to Bonifaz.

Chevron does not make out a <u>prima facie</u> case that Bonifaz lacked probable cause to bring suit on behalf of Ms. Jame.  The Court therefore strikes Chevron's action to the extent that it rests on Bonifaz filing Ms. Jame's claims.  However, discovery is required as to whether Bonifaz lacked probable cause to continue prosecuting her claims.  The Court accordingly defers deciding

17

whether to strike Chevron's action insofar as it rests on this issue.

### 4.   Claims by Nixon Rodriguez

Chevron contends that Bonifaz lacked probable cause to bring suit on behalf of Mr. Rodriguez, Ms. Jame's spouse.  It asserts that Mr. Rodriguez did not submit an intake form indicating that he suffered from any physical or emotional harm.  Chevron also maintains, without proffering evidence, that he did not tell Bonifaz, Mr. Peña or any of Mr. Peña's assistants that he had suffered such harm.

As noted above, Chevron has not established a <u>prima facie</u> case that Bonifaz lacked probable cause to bring the claims by Ms. Jame. With regard to Mr. Rodriguez, Chevron likewise fails to proffer evidence to demonstrate that his claims were wholly without merit. Because it does not satisfy its burden, the Court strikes Chevron's malicious prosecution claim to the extent that it rests on Mr. Rodriguez's claims.

### 5.   Claims by Gloria Carmina Vera Chamba

Chevron also maintains that Bonifaz lacked probable cause to bring and to continue to prosecute Ms. Vera's claims.  As noted above, Ms. Vera asserted claims on behalf of her son.  The Second Amended Complaint alleged, "In October 2002, Jane Gloria Chamba's son, who was seven years old, was diagnosed with leukemia."  Defs.' RJN, Ex. 9 ¶ 12.

Chevron argues that the information Bonifaz had prior to filing suit did not support probable cause.  On her intake form, Ms. Vera stated that she first suspected that her son had cancer on

United States District Court
For the Northern District of California

October 23, 2002, Rector Decl., Ex. I at 7, but she did not list the date when the cancer was diagnosed. Ms. Vera does not state anywhere on the form that her son had leukemia.[5] However, Bonifaz states that, on March 10, 2006, one month before the lawsuit was filed, he met with Mr. Peña and Eduardo Gallo, another Ecuadorian attorney, who explained that Ms. Vera's son had leukemia. Bonifaz Decl. ¶ 9.[6] He asserts that Ms. Vera's intake form and his pre-filing conversation with Mr. Peña and Mr. Gallo provided probable cause.

The intake form contained limited information and Bonifaz apparently relied on information from Mr. Peña and Mr. Gallo that proved unsubstantiated. However, on this motion, Chevron bears the burden to proffer evidence that, if credited, would demonstrate a lack of probable cause. Nothing proffered by Chevron establishes a <u>prima facie</u> showing that Bonifaz knew, at the time the lawsuit was filed, that Ms. Vera's claims were false.

Chevron also asserts that Bonifaz lacked probable cause to continue prosecuting Ms. Vera's case after "obtaining conclusive evidence that her claim was baseless." Opp'n at 28. Chevron

---

[5] Unlike the forms of the other plaintiffs, that of Ms. Vera did not have a field for the type of cancer alleged.

[6] Chevron objects to Bonifaz's declaration in its entirety, asserting that it is inadmissible hearsay. The Court overrules this objection because Bonifaz makes his statements in a sworn declaration and, as a party, can be called to testify at trial. Thus, his statements in his declaration are not hearsay. Also, the Court overrules Chevron's hearsay objection to Bonifaz's statement that Mr. Peña and Mr. Gallo explained to him that Ms. Vera's son had leukemia. This is not received to prove that Ms. Vera's son had the disease, but instead to show Bonifaz's knowledge, belief and state of mind.

refers to the medical records of Ms. Vera's son, proffered in the Gonzales case, which did not reflect a diagnosis of leukemia.[7] Although these records are not before the Court, the lack of information in the records would not suggest that Bonifaz knew that Ms. Vera's representations were false.  There is no competent evidence that to support a prima facie case that Bonifaz lacked probable cause to continue prosecuting Ms. Vera's claims.

Accordingly, the Court strikes Chevron's malicious prosecution action to the extent that it rests on Ms. Vera's claims.

C.   Malice

In a malicious prosecution action, malice refers to "'the subjective intent or purpose with which the defendant acted in initiating the prior action.'"  Estate of Tucker, 515 F.3d at 1030 (quoting Sheldon Appel, 47 Cal. 3d at 874).  Malice "is not limited to actual hostility or ill will toward the plaintiff."  Sierra Club Found., 72 Cal. App. 4th at 1157.  It is also "present when proceedings are instituted primarily for an improper purpose."  Id.  Suits demonstrating an improper purpose include those in which:

> (1) the person initiating them does not believe that his claim may be held valid; (2) the proceedings are begun primarily because of hostility or ill will; (3) the proceedings are initiated solely for the purpose of depriving the person against whom they are initiated of a beneficial use of his property; (4) the proceedings are initiated for the purpose of forcing a settlement which has no relation to the merits of the claim.

Estate of Tucker, 515 F.3d at 1030 (quoting Sierra Club Found., 72

---

[7] Chevron also cites statements made in the Gonzales court's sanctions order.  As explained above, Chevron cannot rely on that court's findings and analysis for the truth of the matters asserted.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Cal. App. 4th at 1157).  If a "'trial court determines that the prior action was not objectively tenable, the extent of a defendant attorney's investigation and research may be relevant to the further question of whether or not the attorney acted with malice.'"  Sycamore Ridge, 157 Cal. App. 4th at 1407 (quoting Sheldon Appel, 47 Cal. 3d at 883).  "Malice is usually a question of fact for the jury to determine."  Estate of Tucker, 515 F.3d at 1030 (citation omitted).

As noted above, Chevron may be able to show that Bonifaz lacked probable cause to maintain Ms. Jame's suit after she admitted to his associates that she did not have breast cancer.  After this admission, it would have been apparent that her claims were not valid.  If Bonifaz knew of her admission and did not dismiss her claims, malice on his part could be inferred.  Drummond v. Desmarais, 176 Cal. App. 4th 439, 452 (2009) ("A lack of probable cause will therefore support an inference of malice.") (citing Soukup v. Law Offices of Herbert Hafif, 39 Cal. 4th 260, 292 (2006)).

II.  Discovery Pursuant to Rule 56(f)

Rule 56(f) of the Federal Rules of Civil Procedure provides that the court may deny or continue a motion for summary judgment "[i]f a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition."  The requesting party must show (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery, (2) the facts sought exist and (3) the sought-after facts are essential to oppose summary judgment.  Family Home

**United States District Court**
For the Northern District of California

& Fin. Ctr., Inc. v. Fed. Home Loan Mortgage Corp., 525 F.3d 822, 827 (9th Cir. 2008).  Federal courts apply the Rule 56(f) analysis when considering whether to grant additional discovery on an anti-SLAPP motion to strike.  Metabolife, 264 F.3d at 845-47.

Chevron maintains that, because it requires discovery to mount its opposition, the Court should defer its decision on this motion. This argument is only relevant as to discovery concerning probable cause to bring or to continue the prosecution of the claims by Mr. Rodriguez, Ms. Jame and Ms. Vera.  As stated above, Chevron cannot establish that the claims of the other Gonzales plaintiffs were favorably terminated on the merits; no discovery on this issue could change this determination.

Concerning Mr. Rodriguez, Chevron does not identify any specific facts that would buttress its argument that Bonifaz lacked probable cause to bring his claims.  Accordingly, Chevron has not met its burden to show that discovery is necessary with respect to Mr. Rodriguez.

Likewise, Chevron fails to identify specific facts it requires to support its argument that Bonifaz lacked probable cause to bring Ms. Jame's claims.  However, as explained above, discovery on the discrete, narrow issue of what Bonifaz knew of Ms. Jame's statement to Lathram and Patanzis could provide support for Chevron's claim that he lacked probable cause to continue his prosecution of her claims.  Thus, under Rule 56(f), the Court affords Chevron the opportunity to conduct discovery on this matter.

With regard to Ms. Vera, Chevron asserts that, for this motion, Bonifaz asserts for the first time that Mr. Peña and Mr.

22

United States District Court
For the Northern District of California

Gallo communicated to him that Ms. Vera's son had leukemia.  As stated above, Bonifaz cited this communication to assert that he had probable cause to bring suit on behalf of Ms. Vera.  Chevron, however, does not cite evidence that contradicts Bonifaz's assertion.  Nor does Chevron identify specific facts that it hopes to uncover during discovery that would show that Bonifaz lacked probable cause to bring Ms. Vera's claims.  Instead, Chevron broadly asserts that there is a dispute as to material facts concerning the discussions at the March 10, 2006 meeting, referring to the date on which Bonifaz claims he learned about Ms. Vera and her son.  <u>See</u> Bonifaz Decl. ¶ 9.  Stating that there is a dispute of fact, however, is not equivalent to citing specific facts that can be uncovered through discovery.  Accordingly, Chevron does not meet its burden to be allowed discovery concerning Ms. Vera.

Chevron is entitled to pursue discovery as to whether Bonifaz knew of Ms. Jame's statement to his associates.  Thus, the Court defers its ruling on Bonifaz's motion to the extent that it rests on Chevron's claim concerning the continued prosecution of Ms. Jame's claims.  However, Chevron fails to identify specific facts it requires to oppose Bonifaz's motion as to Mr. Rodriguez and Ms. Vera.  Discovery concerning the claims of these <u>Gonzales</u> plaintiffs is not necessary.

CONCLUSION

For the foregoing reasons, the Court GRANTS in part Defendants' anti-SLAPP Motion to Strike (Docket No. 25), GRANTS in part Chevron's motion for a continuance and to conduct discovery and GRANTS Chevron's administrative motion for leave to file

23

additional briefing (Docket No. 44).  The Court defers ruling on Defendants' motion to the extent that it is directed at Chevron's malicious prosecution action based on Bonifaz's continued prosecution of claims by Ms. Jame after her admission that she did not have breast cancer.  In all other respects, the Court strikes Chevron's malicious prosecution action and denies Chevron's request to conduct to discovery.

The Court grants Chevron sixty days to conduct discovery on whether Bonifaz knew that Ms. Jame admitted to his co-counsel that she did not have cancer.  Chevron may file a supplemental opposition brief, addressing this limited issue, of no more than ten pages in length, by July 15, 2010.  Defendants' supplemental reply, of equal length, shall be due July 22, 2010.

The case management conference scheduled for June 29, 2010 at 2:00 p.m. is continued to August 10, 2010 at 2:00 p.m.

IT IS SO ORDERED.

Dated: May 12, 2010

_____
CLAUDIA WILKEN
United States District Judge